The first case to be argued is 19-4237, Up State Tower Co., L.L.C. v. The Town of Kiantone. So we'll begin with Mr. Webb, who has reserved the floor. Thank you, Your Honor. Can you hear me? We can hear you. Okay. The Town of Kiantone's contention is that the district court, in making its determination that the town's determination was not supported by substantial evidence, considered two affidavits that contained facts that were not in the record before the town board at that time, or that really could be inferred from the facts that were before the board. In considering one of the properties which is involved here, it was called the Shubert property, in which the town determined that it was a less intrusive property and it was available if Up State would have used good faith in trying to negotiate the terms. The Shubert property is an 87-acre vacant piece of property, vacant land, located across the street from the proposed site. It's a site that was recommended that Up State consider by the county and town planning board as having, even though it was outside the area under the zoning code that would permit the towers. But the planning board felt that the proposed site, which was a 30 by 50 site included, was too intrusive of the zoning and was going to require too many variances. And thought that the only way that this would work would be if Up State explored other areas and the planning board said that they would recommend variances. We asked that they look at that parcel and the district court, in making their determination, looked to the carpenter affidavit, which was dated in October of 2018 after the board's hearing, which took place in December of 2017. One of the things that they noted, that carpenter had said that the variances for the Shubert property would be the same as the proposed site. And the board indicated in their findings the fact that that was not correct, that the Shubert property encompassed an 87-acre parcel and it would not involve the same variances. As far as the good date aspect of it, the carpenter affidavit, the court cited at least 11 paragraphs in regards to the negotiations that took place between Shubert and Carpenter. And the facts that were in that affidavit just were not before the board. The district court indicates that Shubert and Up State had agreed to a monthly rental that exceeded their standard rental. After reaching an agreement on the proposed site that Shubert reneged, that he hired a consultant and asked for increases of 250%. These facts, as I set forth in my brief, just were not before the town board. The last public hearing that took place was on December 15, 2015. At that public hearing, both Carpenter, as Up State's representative, and Mr. Shubert, who owns the 87-acre parcel across the street, were present. Up State's representative, Carpenter, indicated to the board that they had inspected 19 parcels and submitted their site justification report to the board. And that none of the parcels would be suitable and that they couldn't reach any type of an agreement with Shubert. One of the problems was with the parcels that they considered were all in the, most of them were in the same zone that the planning board said were unacceptable as requiring too many variances. In essence, the other parcels were similar to the proposed parcel. At that time, Mr. Carpenter indicated to the board that they were satisfied with the proposed site. They wanted the board to make a determination and they wanted it to be made within the shot clock period of 150 days, which would have meant that the board had to decide it by December 28. Prior to that, Up State had requested a number of adjournments, so the board hadn't really considered their site justification committee. At that time, the board told Up State that they felt that their time to consider it had been extended by the 71 days in which they'd asked for adjournments. Up State indicated no, they were satisfied with the proposed site and wanted the board to make a consideration. The board asked if they would make any contribution to having a town hire an expert to help them in the evaluation. They said no. At that time, Mr. Schuver stood up, who was in the audience, and said that he was still willing to negotiate with Up State, that he hadn't closed the door on them. Up State did not respond. As reflected in the minutes later on, he submitted an affidavit to the board. You said it was a Monday? A bigger pardon? Later on, Schuver submitted an affidavit to the board, which was before the board. That was stated in February of 2016, indicating that he was willing to negotiate. He felt that Up State wasn't negotiating with him in good faith, that they had a very attractive lease. In essence, they were going to go with that lease, and Up State took that position before the board. One minute. Stating that they weren't going to pay Schuver what he was asking for, which was too much money. None of the negotiation facts contained in the affidavit of Schuver were before the board, which the district court relied on. Also, in regards to the evaluation of putting an antenna on the poles at the Jamestown Sports Complex, the attached memos and affidavits relating to correspondence with the school, in which they said they weren't interested. If you look at that, they were related to placement of a tower, not putting an antenna on the light poles at the sports complex, which the district court indicated in its decision that, contrary to the town's assertion, plaintiff did explore leasing space on the light tower at the Jamestown Sports Complex, but it was unable to reach an agreement with the school district. That agreement, as I said, related to a tower, not placing an antenna on the light pole. The district court specifically said defendants' contention that the light pole tower at the sports complex was a viable alternative for placement of a plaintiff's wireless facility appears to have been purely speculative. The fact is they never investigated that aspect of it. Thank you. All right. Let me ask my colleagues if they have any questions for Mr. Webb. Judge Parker? Just a couple of questions. You urged on us that the district court judge committed error in considering essentially the Carpenter and Wong affidavits. I understand that correctly, right? Yes, that's correct. But the district court explained that it was not basing its ruling on those affidavits, and the court's holding was premised on evidence in the record without those affidavits. That's what the court said in its decision on the reconsideration when we raised the points. And when you read the court's decision, as I said, it certainly spent a lot of time citing the Carpenter affidavits as justification for its decision in relating to whether or not there was good faith in the negotiations. None of those facts were before the record. None of those facts could be inferred from things in the record. Those were all items that were in the Carpenter affidavit. And then the court, after we raised those things and said that they were improperly considered, the district court said, oh, well, there wasn't substantial evidence anyway, so it doesn't make any difference. And I think it does. I think it is clear that they relied upon those evidence. And if you consider what evidence was before the board, it's clear that Upstate was not negotiating in good faith. That's the only thing that was before the board that the board had at that time was Shuver's statement that he would be willing to negotiate with them and Upstate saying, no, we're not going to negotiate, decide the thing within the shot clock period. All these items showing that they negotiated in good faith were all in the Carpenter affidavit, none of which appeared before the town board. Thank you. Judge Park. Just one follow-up question to Judge Parker's question. I guess the standard of review on a reconsideration motion is abuse of discretion. So in light of your response, counsel, I guess you're asking us to find that the district court abused its discretion in finding that it would have reached the same conclusion even without the affidavits. Well, yes, I guess that is correct. That's what we're saying. Without those affidavits, the town's decision was supported by substantial evidence. All right. Judge Park, do you have any other questions? No, thank you. Sorry. Okay. So Mr. Webb has reserved two minutes and we'll hear now from Mr. Thompson. Thank you, your honor. This is Scott Thompson on behalf of Upstate Tower. I want to address three points today. The first one is that the only issue before this court is the narrow issue raised by the town in its issues presented. And in doing that, it does not ask this court to reach whether the denial was supported by substantial evidence on the whole. The second is that even if the court reaches the broader question of whether the denial is supported by substantial evidence, the town's arguments are not supported by substantial evidence, as was explained by the district court in its reconsideration order. And the third point I'm going to address is that the town's denial and current arguments are ultimately based on the wrong legal standard, and that that also is grounds, as the district court correctly found, for finding that the town violated federal law. So on my first point, as Judge Parker just pointed out, what is before the court is defined by the town's issues presented for the court to decide. And the town has decided to narrowly define that as being whether the district court erred in relying on the Carpenter and Wong affidavits. In doing that, the town has made an affirmative choice not to ask the court whether the district court was incorrect in its recon order, even without the Wong and Carpenter affidavits, that the court had no problem finding that the town's denial was not supported by substantial evidence. The court, therefore, can only address the issue of, did the district court rely on Carpenter and Wong? And in a well-written, I think, 25-page-long decision responding to the town's motion for reconsideration, the district court explained that, in fact, it reached the same conclusion even without looking at Wong and Carpenter affidavits. The town, in fact, the town in its brief did not address the reconsideration order at all. The town did not ask this court, as it just did, to consider that the district court abused its discretion in that reconsideration order. It simply doesn't raise it, and that alone is grounds to find that the town's appeal fails. Even if the court reaches the questions raised today in a broader fashion, whether the denial was supported by substantial evidence, it is not. And let me focus. The town's case turns almost entirely on this Schuver property. But the Schuver property, as clear from the record evidence, is not more feasible, and the town's arguments, including its arguments today, are not supported by substantial evidence, as the district court correctly found. First and foremost, the Schuver property is not more feasible, and this turns on three points. Number one, the town repeatedly says that the Schuver property is 87 acres of unoccupied land. That is true, but not correct. Mr. Schuver owns property that is 87 acres. However, the record evidence before the town shows that Mr. Schuver was only willing to consider having power in the far northeast corner of his property. Upstate approached and talked to Mr. Schuver about the other portions of his property. They were referred to as parcels numbers 14 and number 17 in Upstate's supplemental site selection report, and those are at A336 and 341 of the record. And in that, it was made clear that Mr. Schuver had said he was not interested in having a tower on those larger commercially zoned portions of his property. The only portion of his property that he was willing to have it to talk about it even was upper northeast corner, and that is shown in a construction drawing at A347. As a result of that, the property that was at issue was zoned residential, which is an area not permitted by the town's code, and as a result, also suffered from the same setback problems as the proposed site. It was the area was too small to meet the 500 foot setback requirement and too small to meet the 280 foot what they call safety fall down zone. Mr. Schuver, that site selection report was before the town and presented to the town at the December 2015 hearing at which Mr. Schuver was present. Mr. Schuver has never contradicted the fact that he would only consider the tower being in that upper northeast corner of his property. So, as a result, that property is not a more feasible location than the commercially zoned area where the proposed tower is sited, because Schuver property is residential and it suffers from the same setback problems as the commercial property. In addition to those issues, the town's denial relies on things that are not substantial evidence in the record. Notably, as Mr. Webb talked about today, the town relies heavily on an affidavit from Mr. Schuver. However, that affidavit was submitted by the town to the court as the litigation. It was an affidavit submitted along with the town's answer to the complaint in this case. It was not an affidavit submitted by Mr. Schuver to the town. It was not testimony made by Mr. Schuver to the town during an open hearing. And so, even though it existed before the town made its denial, it's incorrect and inaccurate to say that it was submitted to the town. Moreover, as the district court correctly explained, that affidavit is rife with essentially nothing but opinion and speculation by Mr. Schuver. It's Mr. Schuver saying that it led me to conclude that they weren't negotiating with him in good faith. And I got the impression that Upstate was not very interested. And I believe my property is. That is all his speculation. And as the district court correctly pointed out in its reconsideration order, that does not constitute substantial evidence to support a denial. Moreover, as the district court correctly pointed out in the reconsideration order, this is now the opinion of someone who has a financial interest. He is someone who is basically has the town trying to push Upstate to use his property and so wants to take advantage of that. And the district court correctly found in its reconsideration order that as a result, it was not substantial evidence. Let me very quickly address the sports complex. Again, this also was not supported by substantial evidence in the record. It's very clear that the town in the denial says that Mr. Wong said that it was possible to use the light stanchions there. The record shows in the minutes that he was asked whether you could use telephone poles. And he said you could possibly if they were the right height and if they could support the equipment. He was not even talking about the sports complex. He was talking about telephone poles. I only have about two minutes left, so let me move on. Critically, the town's arguments are pressing, relying on a wrong legal standard. Under New York variance law, all that Upstate is required to show is that its proposed facility is pro site is more feasible based on economic and other factors than other alternatives. In this case, we've done that. Even even if the Schubert property were available, the proposed site is more feasible because the Schubert pipe property is in a residential area. And the case is consolidated Edison versus Hoffman. The Rosenberg case emphasized that that issue of more feasibility has to be in light of the local zoning. The town cannot simply say we don't care about our code, which says that there shall be no new towers in residential area. In fact, thank you. In fact, that shows that the town's denial is inconsistent with its own code. Right. Its own code does not require a showing of that. It be the least intrusive or that there be that it would be fruitless to continue negotiations. What the town has done, and we pointed this out in our brief, the town is importing an inaccurate standard from federal effective prohibition claims that recall. And in fact, importing it from the first circuit, which has adopted a standard that is more stringent than the second circuits. And so they're now trying to require us to show that nothing else would possibly be available. As a result, they are violating their denial is inconsistent with law. The last thing I want to point out is just something he that Mr. Webb just addressed. He talked about the the shot clock. I want to remind the court that the district court found that, in fact, the town did violate the federal shot clock. And so I think that's important to keep in mind. I see my time is up. Thank you for taking questions. Thank you, Judge Parker. Any questions? I have no questions. Thank you. Judge Park. No questions. All right. So then we turn to Mr. Webb, who's reserved two minutes of rebuttal. In regards to whether or not we waived our right to have the court consider whether the board's determination was based on substantial evidence without the affidavits of Carpenter and Wong, I would hope that we've addressed those issues in our brief so that they can be inferred and that they were not waived. They're certainly not like the Tobert case where we were just citing those issues in a footnote. I think we've addressed them, and I hope the court would consider those. We don't have any argument with the fact that the more feasible standard is the correct standard in the board when it denied the application, although it did unfortunately use the word least intrusive. I think in the conclusion and throughout the findings of fact make clear that we were dealing with a less intrusive standard. And in regards to the Shuver affidavit, after the December 15th hearing in which they demanded that the town make a determination under the shot clock that they were entitled to a permit as essentially a matter of right, I think they sued us immediately. And part of that, we did attach the Shuver affidavit to part of the answer. But the Shuver affidavit was submitted to the board and was before the board and was an exhibit in the board resolution. It was also provided to Upstate, and Upstate never responded. The first time that we heard about the aspects of the negotiation, which they were trying to justify were in good faith, were two years later. And the affidavit that they submitted in 2018 in opposition to our motion for summary judgment to dismiss their count that the board's action was not based on substantial evidence. Thank you, Mr. Webb. Judge Parker, any questions for Mr. Webb? No, I don't. Judge Park? No, thank you. All right. We'll reserve decision in 19-4237.